IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-01568-SKC-RTG

WILLOW CREEK COMPANIES LLC,
*a Colorado limited liability company*,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,
*a New York corporation.*,

    Defendant.

## ORDER RE: SUMMARY JUDGMENT MOTIONS (DKTS. 18 & 20)

This case arises from Plaintiff Willow Creek Companies LLC's (Willow Creek) attempts to recover payments under an automobile policy issued to its subcontractor Pradon Construction & Trucking Co (Pradon). Dkt. 1. Relevant here, Willow Creek asserts a breach of contract claim against Pradon's insurer, Defendant Zurich American Insurance Company (Zurich).[1] Before the Court are the parties' motions seeking summary judgment in their respective favors. Dkts. 18 (Plaintiff), 20 (Defendant). Both motions are fully briefed.

---

[1] Plaintiff also asserts a claim for declaratory judgment. But the judgment sought turns on the same analysis and issues involved with the breach of contract claim.

1

The Court has jurisdiction under 28 U.S.C. § 1332. The Court has carefully considered the motions and respective briefing, the exhibit attachments, and the applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude Zurich breached the insurance contract, Zurich's motion is GRANTED and Willow Creek's motion is DENIED.

**UNDISPUTED MATERIAL FACTS**

Based on the parties' submissions and the Court's review of the evidence, the following facts are undisputed: On April 16, 2020, Willow Creek entered a Master Service Agreement (MSA) with Pradon. Dkt. 32, ¶3. Under the MSA, Pradon was required to secure insurance coverage for the benefit of Willow Creek. *Id.* at ¶4. Specifically, Pradon needed to acquire the following minimum amounts of coverage for each type of policy:

- Workers' Compensation and Employer's Liability
  - Coverage A – Statutory for states of operations.
  - Coverage B – Employer's Liability
  - $1,000,000.00 Bodily Injury Per Accident
  - $1,000,000 Bodily Injury by Disease
- Comprehensive General Liability Coverage
  - $1,000,000 Combined Single Limit
  - $2,000,000.00 Aggregate
  - Broad From Comprehensive General Liability
  - Products and Completed Operations
  - Broad Form Contractual Liability Coverage
  - Blanket Waiver of Subrogation to Willow Creek Companies, LLC
  - Policy is primary and non-contributory
- Automobile Liability
  - $1,000,000 Combined Single Limit
  - Owned, Non-Owned and Hired
  - Blanket Waiver of Subrogation to (Contractor name)
  - Pollution – MCS 90 (if applicable)
  - Policy is primary and non-contributory
- Umbrella/Excess Liability
  - $2,000,000
  - Follows form of underlying policies

Dkt. 21, pp.93-94.

Pertinent here, Zurich issued Pradon a primary commercial automobile liability insurance policy, Policy No. BAP 5899661-07 (the Policy), with effective dates of May 12, 2020, to May 12, 2021, and a total coverage limit of $2,000,000. Dkt. 32, ¶1; Dkt. 21, pp.4-76; Dkt. 30, ¶8. With respect to additional insureds like Willow Creek, the Policy contained a "Coverage Extension Endorsement" that provided:

**A. Amended Who Is An Insured**
   1. The following is added to the **Who Is An Insured** Provision in **Section II – Covered Autos Liability Coverage**:
      The following are also "insureds":

      d. Where and to the extent permitted by law, any person(s) or organization(s) where required by written contract or written agreement with you executed prior to any "accident", including those person(s) or organization(s) directing your work pursuant to such written contract or written agreement with you, provided the "accident" arises out of operations governed by such contract or agreement and only up to the limits required in the written contract or written agreement, or the Limits of Insurance shown in the Declarations, whichever is less.

Dkt. 32, ¶2; Dkt. 21, p.60.

On December 1, 2020, Pradon employee Sual Ornelas drove a truckload of pipes to a project site in Pecos, Texas, where the pipes were to be unloaded. Dkt. 32, ¶5. While unloading, Mr. Ornelas was tragically killed when the pipes became unsecured and rolled on top of him. *Id.* at ¶6. Mr. Ornelas' Estate filed suit against Willow Creek and others in Texas asserting that their negligence proximately caused Mr. Ornelas' death (Lawsuit). Dkt. 21, p.104.

Willow Creek tendered the Lawsuit to Zurich for defense and indemnification. Dkt. 32, ¶8. Zurich agreed to defend Willow Creek under a reservation of rights, and on March 9, 2021, and March 12, 2021, Zurich issued a reservation of rights letter and a supplemental letter to Willow Creek. *Id.* at ¶¶9-11. In its initial letter, Zurich

3

reserved its right to disclaim coverage pursuant to the additional insured endorsement of the Policy, which extended coverage to Willow Creek but only to the extent required by the MSA. Dkt. 21, pp. 110-14. In its supplemental letter, Zurich notified Plaintiff that because the MSA required "a primary Auto Liability policy with a minimum limit of $1,000,000 CSL . . . , to the extent that [the Policy] may be called upon to indemnify, the limit available to do so will be $1,000,000." *Id.* at p.117.

The Lawsuit ultimately settled for an undisclosed amount; Zurich contributed to the settlement and the Lawsuit was dismissed with prejudice. Dkt. 32, ¶¶12-13. Willow Creek then filed this case arguing it is "entitled to the $2,000,000 policy limit identified in the Policy's declarations for coverage as an additional insured and for indemnity with respect to the claims raised against it in the Lawsuit." Dkt. 1, ¶27.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it

4

has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Moreover, when the Court is faced with cross-motions for summary judgment, the "filing of cross motions does not mean that the material facts are undisputed even if the parties focus on the same claim or defense." *In re Ribozyme Pharm., Inc. Secs. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002). And denying one does not automatically require granting the other. This is because "the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact[.]" *Id.* Cross motions, therefore, must be treated separately. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2002) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## ANALYSIS AND FINDINGS

Willow Creek's claims against Zurich are based on its contention that the Policy manifested an intent to include the MSA as part of its terms. *See* Dkt. 18, p.4. Willow Creek cites the portion of the Policy stating that based on the MSA, Zurich

will pay "up to the limits required in the [MSA], or the Limits of Insurance shown in the Declarations, whichever is less." *Id.* Relying on the third clause, Plaintiff's theory is as follows: The MSA requires a total of $3,000,000 in coverage ($1,000,000 in automobile coverage plus $2,000,000 in umbrella/excess liability coverage), the Policy's total limit is $2,000,000, and because $2,000,000 is the lesser between it and the $3,000,000 purportedly required by the MSA, Zurich is obligated to pay the entire $2,000,000. *Id.* at p.6.

In its Motion for Summary Judgment and its Response to Plaintiff's competing Motion, Zurich contends the Policy unambiguously incorporates *only* the automobile liability limit from the MSA. Zurich is correct.

**A.    Texas Law on Contract Interpretation**

Because the parties agree this case is controlled by Texas law (Dkt. 23, p.2), the Court employs "the principles of Texas contract construction" in interpreting the Policy. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). In Texas, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Id.* Where an insurance policy "is worded so that it can be given only one reasonable construction, it will be enforced as written." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

6

Concerning the questions at issue in this matter, "Texas law has long provided that a separate contract can be incorporated into an insurance policy by an explicit reference clearly indicating the parties' intention to include that contract as part of their agreement." *Urrutia v. Decker*, 992 S.W.2d 440, 442 (Tex. 1999) (citing *Goddard v. East Tex. Fire Ins. Co.*, 67 Tex. 69, 1 S.W. 906, 907 (1886)). However, while courts must consult the separate document in their analysis, they cannot expand the obligations of the Policy. *ExxonMobil Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 672 S.W.3d 415, 417 (Tex. 2023), *reh'g denied* (Sept. 1, 2023). And Texas law is clear that an insurer "may provide lower coverage limits to the additional insured than to the named insured." *Urrutia*, 992 S.W.2d at 443. Thus, the extent the MSA is incorporated into the Policy, it is controlled by the Policy language. *In re Deepwater Horizon*, 470 S.W.3d 452, 469 (Tex. 2015). Plaintiff's arguments in this case seek to turn that concept on its head.

**B.   Discussion**

In support of its claim to $2,000,000, Plaintiff contends that if Zurich wanted to avoid any obligation to the umbrella/excess liability requirements in the MSA, it could have done so. Dkt. 23, p.6. But it did. Zurich issued automobile insurance and not umbrella insurance and only incorporated the auto liability limit from the MSA.

The plain language of the Policy is clear that it provides "Business Automobile" coverage, and the *only* risks within its scope are those related to automobile liability. Dkt. 21, pp.6, 26-45. And while its total coverage limit is $2,000,000, the additional

7

insured provision relevant to Willow Creek is more limited. Dkt. 21, p.60. According to its plain and unambiguous language, the Policy is clear that where the amount required by the incorporated MSA is less than the total coverage in the Policy, the additional insured is only entitled to the lesser amount. *Id*. Here, the MSA required Pradon to acquire a minimum of $1,000,000 in "Automobile Liability" coverage. *Id*. at 93. Because this is the lesser amount, the Policy unambiguously provides that Willow Creek—as the additional insured—is only entitled to recover $1,000,000. Having reviewed the document in its entirety, there is no provision indicating it provides any type of "umbrella coverage" that would augment the automobile liability amount available to Willow Creek. *Id*.

Willow Creek, however, would have this Court incorporate both the automobile liability requirement and the umbrella/excess liability requirement from the MSA into the Policy. But in doing so, the Court would be rewriting the Policy to be both an auto policy and an umbrella policy. Such a result is not only an impermissible expansion of the contract, but it is also illogical given the conventional understanding of "umbrella insurance," which is "triggered only by reaching the *limits* of *other policies*." *ExxonMobil Corp*, 672 S.W.3d at 420 (first emphasis in original; second emphasis added). In other words, any umbrella coverage would be a separate and supplemental policy. *See* INSURANCE, Black's Law Dictionary (12th ed. 2024) (defining "umbrella policy" as "Excess-liability insurance that . . . provid[es] coverage that exceeds underlying limits of liability."). To be sure, Pradon did purchase umbrella

8

coverage from Gemini Insurance Company. Dkt. 34, p.8, ¶¶1-2. Whether Willow Creek can recover under that policy is between it, Pradon, and Gemini.

Construing the plain and unambiguous language of the "Coverage Extension Endorsement," the Court concludes the Policy does not provide for payments above the $1,000,000 automobile liability requirement in the MSA. Thus, there is no genuine dispute of material fact as to whether Zurich breached the insurance contract when it refused to pay the Policy's full $2,000,000 limit. Zurich is entitled to judgment in its favor on Plaintiff's breach of contract claim and request for declaratory judgment.

\*   \*   \*

For the reasons shared above, IT IS ORDERED:

1. Zurich American Insurance Company's Motion for Summary Judgment (Dkt. 20) is GRANTED and the claims against it are dismissed;

2. Willow Creek Companies LLC's Motion for Summary Judgment (Dkt. 18) is DENIED; and

3. The Clerk of Court shall enter judgment in favor of Zurich, which is entitled to an award of its costs.

DATED: September 29, 2025

BY THE COURT:

S. Kato Crews
United States District Judge